Slip Op. 18-33

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DEOSEN BIOCHEMICAL LTD., DEOSEN BIOCHEMCIAL (ORDOS) LTD., DEOSEN USA, INC., AND A.H.A. INTERNATIONAL CO., LTD.,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br>and<br><br>CP KELCO US, INC.,<br><br>*Defendant-Intervenor*. | Before: Richard W. Goldberg, Senior Judge<br>Court No. 17-00045 |

**OPINION AND ORDER**

[The court sustains the determinations of the U.S. Department of Commerce.]

Dated: April 2, 2018

*Chunlian Yang*, *Kenneth G. Weigel*, Alston & Bird LLP, of Washington, D.C., for plaintiffs.

*Kelly A. Krystyniak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel on the brief was *Brandon J. Custard*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Matthew L. Kanna*, Arent Fox LLP, of Washington, D.C., for defendant-intervenor.

Goldberg, Senior Judge: Plaintiffs Deosen Biochemical Ltd. ("Deosen Zibo"), Deosen Biochemical (Ordos) Ltd. ("Deosen Ordos"), Deosen USA Inc. ("Deosen USA"), and A.H.A.

International Co., Ltd. ("AHA") challenge the final results issued by the U.S. Department of Commerce ("Commerce" or "the Department") in its administrative review of the antidumping duty on xanthan gum from the People's Republic of China.

Plaintiffs filed two separate complaints challenging Commerce's findings as they relate to two separate periods of review: July 19, 2013 through June 30, 2014 ("AR1"), Complaint, No. 17-00044 ("AR1") ECF No. 5 (Mar. 9, 2017), and July 1, 2014 through June 30, 2015 ("AR2"), Complaint, No. 17-00045 ("AR2") ECF No. 2 (Mar. 10, 2017).  The two complaints assert that Commerce cannot lawfully apply to Plaintiffs the China-wide rate of 154.07%, the imposition of which was based primarily on a business arrangement that spanned both periods of review.  *See* Resp. to Suppl. Questionnaire, AR2 P.R. 45 (Oct. 9, 2015), ECF No. 43.  As a result, both complaints and Commerce's ultimate decision will be analyzed collectively by the court.[1]

Specifically, Plaintiffs dispute the application of facts otherwise available ("FA") and adverse facts available ("AFA") under 19 U.S.C. §§ 1677e(a) and (b), *see* Post-Prelim. Results Mem., AR1 P.R. 333 (Aug. 5, 2016), ECF No. 47, as well as the resultant rate imposed by Commerce.  *See Xanthan Gum from the People's Republic of China*, 82 Fed. Reg. 11,434, 11,435 (Dep't Commerce Feb. 23, 2017) (final results) ("Final Results") and accompanying Issues & Decision Mem. ("I&D Mem.").[2]  On review of Plaintiffs' motions for summary judgment, Mot. for J. on Agency R., AR1 & AR2 ECF Nos. 32 (Aug. 23, 31, 2017), the court sustains Commerce's application of FA and AFA as well as the resultant separate rate of 154.07%.

---

[1] The court has entered a substantially identical opinion in *Deosen Biochemical Ltd. v. United States*, Court No. 17-00044.

[2] The Final Results covered only AR2; however, in AR1 Commerce imposed the same rate for the same reasons.  *See Xanthan Gum from the People's Republic of China*, 82 Fed. Reg. 11,428, 11,430–31 (Dep't Commerce Feb. 23, 2017) (final results) and accompanying Issues & Decision Mem.

## BACKGROUND

Commerce initiated an antidumping duty investigation in July 2012, *Xanthan Gum from Austria and the People's Republic of China*, 77 Fed. Reg. 39,210 (Dep't Commerce July 2, 2012) (initiation), and published the results roughly a year later. *Xanthan Gum from the People's Republic of China*, 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) (am. final determination). After receiving requests for review of that order, Commerce initiated the first administrative review. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 79 Fed. Reg. 51,548 (Dep't Commerce Aug. 29, 2014) (initiation).

AHA was chosen as a mandatory respondent, Selection of Resp'ts Mem., AR1 P.R. 24 at 5 (Sept. 23, 2014), and was issued a questionnaire. AHA Questionnaire, AR1 P.R. 27 (Sept. 25, 2014). Based on AHA's responses, Commerce then sent questionnaires to Deosen Zibo and Deosen Ordos in order to gather more information on sales reported by AHA. Deosen Questionnaire, AR1 P.R. 133 (Feb. 26, 2015). The questionnaires requested that the entities describe, and provide documentation relating to, "agreement(s) for sales in the United States (*e.g.*, long-term purchase contract, short-term purchase contract, purchase order, order confirmation)." AHA Questionnaire, AR1 P.R. 27 at A-7; AHA Questionnaire, AR2 P.R. 30 at A-7 (Sept. 29, 2015); Deosen Questionnaire, AR2 P.R. 96 at A-7 (Nov. 13, 2015).

Plaintiffs submitted several responses to Commerce's questionnaires. *See* Deosen's Sec. A Resp., AR1 P.R. 165 at 16–18 (Mar. 24, 2014); AHA's Sec. A Resp., AR1 P.R. 57 at 15–16 (Oct. 27, 2014); AHA's Sec. A Resp., AR2 P.R. 113 at 16–18 (Nov. 23, 2015); s*ee also* Deosen's Sec. A Resp., AR2 P.R. 121 (Dec. 9, 2015). Each response indicated that sales were made pursuant to purchase orders made by customers of the Deosen entities. Commerce then

sent a supplemental questionnaire, to which Plaintiffs responded on May 7, 2015. Deosen's Sec. A. Suppl. Resp., AR1 P.R. 192 (May 7, 2015). In that response, Plaintiffs further explained the relationship between Deosen Zibo and AHA, providing that "the vast majority of Deosen Zibo's US sales were made through AHA International Co., Ltd. to Deosen's US customers" and that "AHA purchased the subject merchandise from Deosen and resold it to Deosen USA . . . ." *Id.* at 6. None of these responses included information on any formal agreements made between Plaintiffs.

Thereafter, the Department delayed announcing its final determinations so that it could "further examine[] the relationship between Deosen and AHA with respect to the sales at issue," Deferral of the Final Results, AR1 P.R. 310 at 4 (Feb. 9, 2016), and sent Plaintiffs a supplemental questionnaire. Suppl. Questionnaire, AR1 P.R. 312 (Mar. 4, 2016).

On March 21, 2016, Plaintiffs disclosed, for the first time, two documents detailing an arrangement between Deosen Zibo and AHA covering the period of March 13, 2013 to February 28, 2015, under which AHA agreed to export xanthan gum on behalf of Deosen Zibo. Resp. to Suppl. Questionnaire, AR1 P.R. 317, Ex. 7 (Mar. 21, 2016) ("Export Service Agreements").[3]

On August 5, 2016, Commerce made preliminary findings on the significance of the Export Service Agreements. *See* Post-Prelim. Results Mem., AR1 P.R. 333 (Aug. 5, 2016). Commerce determined that the documents showed "that Deosen controlled the sales through AHA, that Deosen assumed all responsibilities for the sales, and that Deosen bore the risk of any losses associated with those sales." *Id.* at 6. Thus, the Department found that "Deosen's sales to AHA and AHA's sales to Deosen's U.S. customers were not a legitimate sales process, as claimed by Deosen and AHA, but instead were sales made and controlled by Deosen." *Id.* at 7.

---

[3] The Export Service Agreements were later disclosed in AR2 as well. *See* Resp. to Req. for Submissions, AR2 P.R. 287, Ex. 7 (July 19, 2016).

As a result, Commerce decided that not only had Plaintiffs withheld the Export Service Agreements, they had also impeded the investigation both by providing inconsistent statements contradicted by the Export Service Agreements and by structuring their business arrangement in such a way as to omit necessary information from the record. *See id.* at 7–9 (citing 19 U.S.C. § 1677e(a)(2)).

In its final decision, Commerce determined that not only was FA appropriate, *see id.*, but also that AFA was warranted because Plaintiffs had "failed to cooperate by not acting to the best of [their] ability to comply with a request for information" in violation of 19 U.S.C. § 1677e(b)(1). I&D Mem. cmt. 1. Three specific reasons gave rise to the FA conclusion: Plaintiffs 1) withheld the Export Service Agreements, 2) organized their business arrangement in such a manner so as to impede the investigation, and 3) provided inconsistent information. *Id.* Withholding the Export Service Agreements and not revealing the business arrangement were particularly relevant because, in Commerce's view, those details "could have an effect on U.S. prices" and the information that was provided was "artificially constructed and [did] not provide a reliable basis upon which to calculate a dumping rate." *Id.* Additionally, Commerce determined that, at a minimum, "submit[ting] misleading information" and continuing to be "not forthcoming with key aspects" of the business relationship both were indicators that Plaintiffs had not acted to the best of their abilities, thus justifying the imposition of AFA. *Id.*

Ultimately, even though Plaintiffs were otherwise entitled to a separate rate, *see id.* cmt. 3, Commerce imposed the China-wide rate of 154.07% to Plaintiffs, "the highest dumping margin alleged in the petition," *id.*, as a result of the Department's AFA determination. *See* Final Results at 11,435.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and will sustain Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

In enacting 19 U.S.C. § 1677e, Congress set out a two-step process with which Commerce must comply if it is to invoke AFA. First, the Department must identify a justification for the application of FA and, only then, if there is a determination that a party has not acted to "the best of its ability," may Commerce apply AFA. 19 U.S.C. § 1677e(b)(1). Here, Commerce permissibly imposed an AFA rate of 154.07% and, as such, the Department's Final Results are sustained.

   a. *Adverse Facts Available*

Commerce has the ability to "use [] facts otherwise available" when a party to a proceeding: A) withholds information requested by the Department, B) fails to provide requested information by a specified deadline or in a specified form, C) "significantly impedes a proceeding," or D) provides information that cannot be verified. *See* 19 U.S.C. § 1677e(a)(2). This statute provides Commerce with the ability to fill in "informational gaps" with FA when those gaps arise out of one of the four circumstances described in 19 U.S.C. § 1677e(a)(2). *See Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 41 CIT __, __, 273 F. Supp. 3d 1225, 1231 (2017) (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)). Only once one of these conditions has been met and the Department has deemed FA appropriate may Commence evaluate whether or not to impose AFA. If the Department determines that "an

interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce may:

> [U]se an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and [] is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information.

19 U.S.C. § 1677e(b)(1). In other words, if the party withheld requested information *and* did not "put forth its maximum effort" to comply with that request, *see Nippon Steel Corp.*, 337 F.3d at 1382, the Department can apply AFA.

The court's review probes whether the Department's finding that requested information was withheld is supported by substantial evidence, and its imposition of AFA was in accordance with law. *See Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed Cir. 2012) (applying the substantial evidence standard to agency findings of fact and the "arbitrary and capricious (or contrary to law) standard" to agency reasoning).

Here, Commerce asked for "agreement(s) for sales in the United States," *see, e.g.*, AHA Questionnaire, AR1 P.R. 27 at A-7, and when it became apparent that the Export Service Agreements had been withheld, Commerce determined that the application of FA was appropriate under 19 U.S.C. § 1677e(a)(2). I&D Mem. cmt. 1. Then, because Commerce also determined that Plaintiffs had failed to act to the best of their ability to produce the Export Service Agreements, Commerce imposed an AFA rate of 154.07%. Final Results at 11,435.

Substantial evidence supports Commerce's conclusion that Plaintiffs withheld requested information under 19 U.S.C. § 1677e(a)(2)(A). "The mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record . . . ." *Nippon Steel Corp.*, 337 F.3d at 1381.

As an initial matter, the Export Service Agreements were clearly requested. As the Export Service Agreements laid out an "agreement for sales in the United States," the documents should have been produced in response to Commerce's original questionnaire.[4] Next, the information contained within the Export Service Agreements was withheld. Although Plaintiffs generally described their arrangement, Commerce requested—but was not furnished with— documentation regarding that arrangement. Commerce found that, "[c]ontrary to Deosen's claims, the [Export Service Agreements] [did] not merely confirm the explanations of the relationship given in the questionnaire response but provide[d] the Department with specific details regarding the arrangement between AHA and Deosen which clearly show just how limited AHA's role was in the sales that Deosen reported as AHA's." I&D Mem. cmt. 1. As there were discrepancies between the previous representations and the details found within the Export Service Agreements, Commerce's finding that Plaintiffs withheld requested information under 19 U.S.C. § 1677e(a)(2)(A) is supported by substantial evidence. Once it became clear that those sales agreements had been withheld, Commerce was entitled to apply FA.

Commerce's second justification for applying FA, impeding an investigation under 19 U.S.C. § 1677e(a)(2)(C), is likewise supported by substantial evidence. Commerce's application of FA under 19 U.S.C. § 1677e(a)(2)(A) serves as a distinct ground for applying FA so as to make this separate finding, to an extent, moot. In any event, as this court has previously stated, the parties' arranging a principal-agent relationship for the purposes of obtaining a lower rate may act as an impediment to a proceeding. *See Tianjin Machinery Import & Export Corp. v. United States*, 31 CIT 1416, 1422–24, 2007 WL 2701368, at *5–6 (2007). As in *Tianjin*,

---

[4] Indeed, Plaintiffs appear to concede that the Export Service Agreements were requested by Commerce in the original questionnaire. *See* Mot. for J. on Agency R., AR1 & AR2 ECF Nos. 32 at 21 (Aug. 23, 31, 2017) (suggesting that the withholding of the document was the result of an "accidental omission.").

Plaintiffs only fully revealed their agency scheme designed to obtain the lower cash deposit rate after the fact. Whereas Plaintiffs at one point described "Deosen's U.S. sales of subject merchandise [as] AHA's sales," the Export Service Agreements revealed "that these were actually sales made and controlled by Deosen." I&D Mem. cmt. 1. As a result, substantial evidence supports Commerce's determination that Plaintiffs impeded the Department's investigation by concealing the true nature of Plaintiffs' relationship with one another. Plaintiffs' arguments to the contrary are unavailing.[5]

The court now turns to Commerce's imposition of AFA and whether the Department's determination that Plaintiffs had "failed to cooperate by not acting to the best of [their] ability to comply with a request for information," 19 U.S.C. § 1677e(b)(1), was in accordance with law. "Compliance with the 'best of its ability' standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp.*, 337 F.3d at 1382. Commerce asked for sales agreements four times across two administrative reviews; each time, Plaintiffs withheld key responsive documents. Instead, the Export Service Agreements were produced as "new factual information" in response to the Department's supplemental questionnaire. *See* Resp. to Suppl. Questionnaire, AR1 P.R. 317 at 1 (Mar. 21, 2016).

---

[5] Plaintiffs maintain that Commerce impermissibly relied on "Deosen's and AHA's actions to structure sales of Deosen's subject merchandise in such a way to avoid payment of the applicable antidumping duty cash deposits at the appropriate rate." *See* I&D Mem. cmt. 1. However, not only does this assertion misstate the Department's view but it also overlooks Commerce's primary reason for applying FA. Plaintiffs inaccurately characterize Commerce's FA decision as an attempt by Commerce to "punish Plaintiffs for arranging their sales to use a lower cash deposit rate[, which] was not in accordance with law." *See* Mot. for J. on Agency R. 17, AR1 ECF No. 32 (Aug. 23, 2017); *see also* Mot. for J. on Agency R. 17, AR2 ECF No. 32 (Aug. 31, 2017) ("In an effort to distract from its use of AFA to punish Plaintiffs for using the lower cash deposit rate, Commerce attempts to justify its actions by reciting the statute."). In actuality, Commerce determined that Plaintiffs' business arrangement—and the concealment thereof—impeded the investigation by leaving the record devoid of certain material information. *See* I&D Mem. cmt 1 ("The record demonstrates that Deosen and AHA significantly impeded the proceeding by engaging in a scheme to avoid the applicable cash deposit rate, *resulting in necessary information not being available on the record* to calculate an accurate dumping margin." (emphasis added)). Contrary to Plaintiffs' assertions, Commerce did not conclude that the arrangement itself impeded the investigation.

While Plaintiffs argue that their "unintentional omission due to a good faith misunderstanding of a question cannot be the basis for applying AFA," Mot. for J. on Agency R. 23, AR1 ECF No. 32 (Aug. 23, 2017), they mistakenly construe the statute as both requiring Commerce to 1) excuse such "unintentional omissions" and 2) make a showing of bad faith. It does neither. *See Nippon Steel Corp.*, 337 F.3d at 1382–83 (holding that the statute does not "condone inattentiveness, carelessness, or inadequate record keeping" and "does not contain an intent element.").

Rather, Commerce must only show that a reasonable importer would have known to preserve the requested documentation and that Plaintiffs failed to produce the requested information because they did not put forth their maximum effort. *See id.* Certainly, as here, repeated requests for and avoiding production of certain documents can constitute failure to cooperate to the best of Plaintiffs' ability. *See id.* at 1383 (sustaining Commerce's AFA decision when it requested data that respondent repeatedly failed to—but ultimately did—produce). By withholding a requested document despite multiple requests for its production, Plaintiffs failed to act to the best of their abilities. Therefore, we sustain Commerce's imposition of AFA as it was in accordance with law.

Accordingly, Commerce's determinations that FA and AFA were available are supported by substantial evidence and in accordance with law. As such, those determinations are sustained and the court must next consider whether Commerce's chosen AFA rate was appropriate.

b. *Commerce's Selected AFA Rate*

Plaintiffs also argue that Commerce's selected AFA rate, the China-wide rate, was not in accordance with law because Commerce had already determined that Plaintiffs were entitled to a separate rate. So long as Commerce's reasoning is not arbitrary and capricious, the court will

sustain the Department's chosen AFA rate. *See Changzhou Wujin Fine Chem. Factory Co.*, 701 F.3d at 1377.

"In antidumping duty proceedings involving merchandise from a nonmarket economy country, [] Commerce presumes all respondents are government-controlled and therefore subject to a single country-wide rate." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1353 (Fed. Cir. 2015). If a respondent is able to rebut this presumption, it may be entitled to a separate rate. *See id.*

Regardless of any separate rate analysis, the imposition of AFA may rely on information derived from the petition, final determinations in the investigation, previous reviews, or any other information placed on the record. 19 U.S.C. § 1677e(b)(2). Further, Commerce has the discretion to select the highest rate on the record, 19 U.S.C. § 1677e(d)(2), and the resultant rate need not "reflect[] an alleged commercial reality of the interested party," 19 U.S.C. § 1677e(d)(3)(B). Commerce "may employ [such] inferences . . . to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *See Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1110 (Fed Cir. 2016).

Plaintiffs contend that because they were initially found to be entitled to a separate rate by Commerce, the Department is precluded from using the China-wide rate as part of AFA. Plaintiffs' position ignores the plain language of the statute, which gives Commerce the discretion to impose the highest rate on the record. *See* 19 U.S.C. § 1677e(d)(2); *see also Viet I-Mei Frozen Foods Co.*, 839 F.3d at 1109–10 (upholding Commerce's AFA selection of the Vietnam-wide rate despite the finding of respondent's eligibility for a separate rate). Plaintiffs claim to find support in this court's ruling in *Shenzhen Xinboda Industrial Co. v. United States*, 40 CIT __, __, 180 F. Supp. 3d 1305, 1317 (2016). Yet, that case is inapposite as it

contemplated Commerce's rejection of separate rate information. *See id.* at 1316. That is not at issue here. The question of separate rates is entirely detached from the imposition of AFA such that a party's entitlement to a separate rate does not eliminate the power of Commerce to choose from available numbers on the record, including the country-wide rate. *See* 19 U.S.C. §§ 1677e(b)(2), (d)(2).

Tellingly, Plaintiffs cite to cases decided before Congress's amendments to the Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, § 502, 129 Stat. 362, 383–84 (2015). *See Yantai Xinke Steel Structure Co. v. United States*, Slip Op. 12-95, 2012 WL 2930182, at *14 (CIT July 18, 2012); *Gerber Food (Yunnan) Co. v. United States*, 29 CIT 753, 771–72, 387 F. Supp. 2d 1270, 1287 (2005). It was these amendments that granted Commerce the discretion to apply the highest rate on the record and in which Congress also made clear that the Department was not required to impose an AFA rate that reflected alleged commercial realities. *See* 19 U.S.C. § 1677e(d)(2), (3); *see also generally Özdemir Boru San. ve Tic. Ltd. Sti.*, 41 CIT __, 273 F. Supp. 3d 1225 (discussing the import of the amendments). Plaintiffs conveniently disregard the broad discretion Congress granted to Commerce.

Ultimately, Commerce acted in accordance with law in imposing the China-wide rate despite its contemporaneous determination that Plaintiffs had established their entitlement to a separate rate. AFA permits Commerce to choose from among the options available on the record; that Plaintiffs had established their entitlement to a separate rate as an initial matter did not eliminate the China-wide rate as an option when the Department deemed AFA appropriate. As a result, this court sustains Commerce's chosen AFA rate.

## **CONCLUSION AND ORDER**

For the foregoing reasons, upon consideration of the parties' motions for summary judgment and all papers and proceedings herein, it is hereby:

**ORDERED** that Commerce properly applied FA under 19 U.S.C. § 1677e(a)(2)(A) and (c), AFA under 19 U.S.C. § 1677e(b)(1), and a rate of 154.07%; it is further

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is DENIED.


Dated: April 2, 2018                                                            /s/ Richard W. Goldberg
New York, New York                                                              Richard W. Goldberg
                                                                                Senior Judge